### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED HOMECARE WORKERS OF PENNSYLVANIA, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY RESOURCES HOME CHOICES, LLC, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> :   Civil Action No. <br> : <br> : <br> : <br> : <br> : |

### COMPLAINT FOR INJUNCTIVE RELIEF

This is an action to preserve the *status quo* pending labor arbitration of a grievance and unfair labor practice charge, brought pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, by Plaintiff United Homecare Workers of Pennsylvania ("UHWP" or the "Union"), against Defendant Liberty Resources Home Choices, LLC ("LRHC" or the "Company"). Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. §1331.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiff's claims occurred within this District.

### PARTIES

3. Plaintiff UHWP is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a mailing address at 1500 N. 2nd Street, Harrisburg, PA 17102. UHWP is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5).

4. Plaintiff UHWP is a joint partnership of the Service Employees International Union ("SEIU") and the American Federation of State, County, and Municipal Employees ("AFSCME"). SEIU Healthcare Pennsylvania ("SEIU Healthcare PA"), AFSCME, District 1199C, and AFSCME, District Council 13, in joint partnership conduct the day-to-day operations of UHWP.

5. Defendant LRHC is a private corporation and is an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and Section 2(6) of the NLRA, 29 U.S.C. § 152(6), with a mailing address of 112 North 8th Street, Suite 600, Philadelphia, PA 19107.

6. Defendant LRHC, a subdivision of Liberty Resources, Inc. ("LRI"), is one of three Centers for Independent Living ("CIL") that comprise the "Consumer Delegated Employer Model Home Care Agencies." Defendant LRHC, along with the other CILs, are associated under the Pennsylvania Consumer Workforce Council (the "CWC").

## FACTS

7. LRHC is an approved Medical Assistance agency that provides non-medical personal caregivers (hereinafter "Attendants") to seniors and people with physical disabilities (hereinafter "Consumers").[1]

8. UHWP is the exclusive bargaining representative for all full-time and regular part-time Attendants employed at LRHC. *See* Exhibit A, Parties' Collective Bargaining Agreement ("Ex. A") at Article 1.1.

---

[1] The CBA defines "Consumers" as "those consumers served by the Consumer Delegated Employer Model Home Care Agencies within programs administered by the Office of Long-Term Living of the Pennsylvania Department of Public Welfare under the OBRA Home and Community-Based Services Medical Assistance Waivers and the Act 150 owned and operated by [CILs]." *See* Ex. A at Preamble. This pleading will refer to consumers that use LRHC's services as "Consumers" going forward.

2

9. LRHC employs approximately 650 Attendants in the bargaining unit.

10. UHWP and LRHC, through the CWC, are parties to a collective bargaining agreement ("CBA") that was effective from February 22, 2023, through January 31, 2026. *See* Ex. A at Article 25.1.

11. The Preamble of the CBA provides that UHWP, the CWC, and the Consumer Delegated Employer Model Home Care Agencies "support and desire to advocate for the right to greater independence and quality services for Consumers." *See* Ex. A at Preamble.

12. Article 10 of the CBA establishes a grievance and arbitration procedure for "any complaint or violation concerning the interpretation or application of this [CBA]." *See* Ex. A at Article 10.

13. Article 25.3 of the CBA outlines a process that LRHC must follow "in the event of sale, purchase, merger or any other form of transfer of its business[.]" It states in its entirety:

> The Consumer Delegated Employer Model Home Care Agencies agree to notify the Union in the event that any potential sale or merger transaction is contemplated which may affect the interests of Attendants. Each Consumer Delegated Employer Model Home Care Agency agrees to notify any potential purchaser or new corporation of its collective bargaining agreement with the Union; and, in the event of sale, purchase, merger or any other form of transfer of its business, the Consumer Delegated Employer Model Home Care Agency will work with the Union in a good faith effort to maintain the standards for affected Attendants set forth in this Agreement.

Ex. A at Article 25.3.

14. Article 22.2 of the CBA requires LRHC to make monthly contributions to a multi-employer trust fund named the SEIU Healthcare Pennsylvania Training & Education Fund (the "Fund") and submit a monthly eligibility report regarding those contributions to the Fund. *See* Ex. A at Article 22.2. The purpose of those contributions is to provide training opportunities and related benefits to homecare workers including the Attendants employed by LRHC and

represented by UHWP.

15. On October 24, 2025, UHWP and LRHC became parties to a Memorandum of Understanding ("MOU"). Section 3 of the MOU provides, in pertinent part, that LRHC must adhere to the following notice requirement regarding any closure or winddown of its operations:

> Liberty agrees to provide the Union with 30 days advance notice of its intent to cease operations or dissolve. Further the parties agree to bargain in good faith over the effects of any sale of Liberty Home Choices or its decision to dissolve or cease operations.

Ex. B at Section 3.

16. By virtue of the CBA, Attendants at LRHC are paid a specified hourly wage and enjoy a number of benefits, including health insurance, life insurance, dental and vision benefits, and paid time off. *See* Ex. A at Articles 3 and 4.

17. Membership in the UHWP and its partner unions provides additional benefits outside the CBA and MOU, including lower cost car and health insurance, which the bargaining unit employees of the UHWP will lose if forced to work for a non-unionized health care agency.[2]

18. LRHC, along with other homecare agencies, are Medical Assistant Providers that participate in a network under the auspices of the Community Health Care Choices Managed Care Organizations. Participation in that network is subject to and regulated by an Agreement between the Pennsylvania Department of Human Services ("Department") and the Managed Care Organizations ("MCOs"), known as the 2025 Community HealthChoices Agreement ("CHA"). *See* Exhibit C, Community HealthChoices Agreement ("Ex. C") at Agreement Exhibit U. Specifically, under the CHA, Providers like LRHC have Provider Agreements with the MCOs. *See* Ex. C at Agreement Exhibit U. In addition, there are provisions of the CHA which address

---

[2] Bargaining unit Attendants can find the full array of their union membership benefits with UHWP here: https://www.seiumb.com/

requirements for Provider terminations. *See* Ex. C at Agreement Exhibit V.

19. Under the terms of the CHA, the LRHC, as a Provider, must advise the MCO of its plan to terminate its operation so that the MCO can "notify the Department in writing within ninety (90) days prior to the date [it] will no longer participate in the CHC-MCO Network. *See* Ex. C at Agreement Exhibit V.

20. Furthermore, the LRHC "must submit a … termination work plan within ten (10) business days of the CHC-MCO notifying the Department of the termination and must provide weekly status updates to the work plan." *See* Ex. C at Agreement Exhibit V.

21. 55 Pa. Code § 1101.51(a) mandates that Consumers (recipients of services under MA programs administered by the Department) must have freedom of choice of providers. To that end, it prohibits Providers such as LRHC from making "any direct or indirect referral arrangements" with other providers. Under §1101.51(c) specifically prohibits providers from "making … arrangements with other providers" as follows:

>  (1) [Medical Assistance ("MA")] recipients directly or indirectly to other practitioners or providers for financial consideration or the solicitation of MA recipients from other providers.
>
>  (2) The offering of, or paying, or the acceptance of remuneration to or from other providers for the referral of MA recipients for services or supplies under the MA Program.

22. Consumers of home care services provided by an agency, such as LRHC, have the right, with exceptions not applicable here, to receive at least 10 calendar days advance written notice of the intent of the home care agency to terminate services. 28 Pa Code § 611.57 (a)(2).

23. On December 15, 2025, Ali Kronley, Vice President and Director of UHWP, requested a meeting with LRHC to discuss any potential transition or closing of LRHC's business

that might occur pursuant to the MOU. *See* Exhibit D, Meeting Request Emails from Kronley to Hart and Earle ("Ex. D").

24. On December 17, 2025, Kronley followed up on her request for a meeting to discuss any potential transition of LRHC's business that might occur pursuant to the MOU. *See* Ex. D.

25. On December 19, 2025, Kronley sent another follow up email to Dan Hart, Chief Operating Officer of LRI and LRHC, to schedule a meeting to discuss "any potential closure plans." *See* Exhibit E, December 19, 2025 Email from Kronley to Hart ("Ex. E").

26. On or sometime shortly after December 19, 2025, LRHC assured UHWP that it would honor the MOU by giving UHWP their required 30-days notice before announcing closure of its business.

27. On or sometime shortly after December 19, 2025, LRHC asked UHWP to extend the CBA, which was set to expire on January 31, 2026, to either April or May of 2026.

28. On January 8, 2026 and January 29, 2026, UHWP and LRHC respectively signed a Contract Extension Agreement ("CEA") extending the expiration date of the CBA to May 31, 2026. *See* Exhibit F, Contract Extension Agreement ("Ex. F").

29. On February 2, 2026, Kronley emailed Hart to schedule a meeting to discuss creating a joint communications and transition plan that could be used if LRHC were to close. *See* Exhibit G, "Follow up" Email Chain ("Ex. G").

30. After Kronley followed up with Hart via email on February 4, 2026, that same day, Hart responded and agreed to schedule the meeting for February 23, 2026. *See* Ex. G.

31. On February 12, 2026, Kronley and Morgan Lindsey, Secretary Treasurer of SEIU Healthcare PA, both received numerous calls from Attendants reporting that Consumers were receiving calls from LRHC schedulers, who told them that LRHC was closing.

32. On February 12, 2026, Kronley and Lindsey learned that LRHC, as part of its winding down of its homecare operations, was directing Attendants and Consumers to transition to another agency—Angels of Care, LLC ("AOC"), which is a non-unionized health care agency.

33. Upon information and belief, LRHC shared and continues to share Consumer's contract information with AOC and are encouraging those Consumers to select AOC to provide their home care services.

34. Upon information and belief, when Consumers are directed to AOC, bargaining unit employees of UHWP, without their consent, are being enrolled as employees of AOC.

35. LRHC is required to provide UHWP 60-days notice of its closing or mass layoff. *See* 29 U.S.C. § 2102(a)(1).

36. UHWP did not receive 60-days notice that LRHC was closing its business and conducting a mass layoff.

37. On February 12, 2026, Kronley and Lindsey attempted to call Hart, Anton Austin, Executive Director of LRHC, and Thomas Earle, CEO of LRI, regarding the announcement of LRHC's closure, but they did not receive any response.

38. On Friday, February 13, 2026, Hart emailed Kronley and Lindsey an "update from management," explaining that LRHC "made the decision to end home care services by May of 2026." *See* Exhibit H, "Update" Email Chain ("Ex. H"). That notice failed to comply with the MOU, as it failed to provide 30-days notice prior to LRHC's implementation of a winding down of it's homecare services .

39. In response, that same day, Lindsey and Kronley both emailed Hart to schedule time to talk that day or over the weekend, and to request that LRHC stop directing Consumers and Attendants to AOC. *See* Ex. H.

40. A few hours after their emails, Earle emailed Linsdey and Kronley erroneously claiming that "Consumers are being presented with options including the Consumer Directed model as well as being informed to speak with their Supports coordinator." *See* Ex. H.

41. At the end of this email, Earle offered to meet with Lindsey and Kronley on Tuesday, February 17, 2026. *See* Ex. H.

42. On Monday, February 16, 2026, Hart offered to meet with Lindsey and Kronley that morning. *See* Ex. H.

43. That day, Kronley and Lindsey met via Zoom with Earle and Hart. On this call, Earle and Hart confirmed that LRHC was closing and that they had notified their management team and in-office staff, not including Attendants, of its closure during the prior week.

44. Thereafter, on that same call, Kronley and Lindsey asked Earle and Hart to stop LRHC from notifying Consumers of its closure until the UHWP and LRHC could bargain the effects of its closure, as required by the MOU.

45. In response to this request, LRHC refused to stop notifying Consumers of its closure.

46. On February 18, 2025, UHWP sent LRHC a request for information ("RFI") needed to bargain the effects of LRHC's closure, pursuant to Section 3 of the MOU. *See* Exhibit I, UHWP's February 18, 2026 Request for Information ("Ex. I").

47. On February 19, 2025, UHWP, including Lindsey, met with Attendants in the bargaining unit and learned that LRHC were *only* providing Consumers contact information to transition to AOC. *See* Ex. I.

48. In that same meeting, Attendants shared that LRHC was providing information regarding wages and benefits at AOC and sharing URLs to sign up to be hired by AOC. *See* Ex. I.

49. On February 20, 2026, UHWP's counsel emailed and overnighted a letter to Earle, explaining that the LRHC violated the CBA and the MOU by failing to provide notice or an opportunity to bargain prior to transferring bargaining unit work to another agency as part of its winddown and eventual closure. *See* Exhibit J, February 20, 2026 Letter from UHWP's Counsel to Earle ("Ex. J").

50. On February 20, 2026, LRHC's counsel emailed Matt Yarnell, President of SEIU Healthcare PA, a letter requesting that UHWP retract its February 18, 2026 RFI. *See* Exhibit K, February 20, 2026 Letter from LRHC's Counsel to Yarnell ("Ex. K").

51. On February 24, 2026, UHWP's counsel on behalf of UHWP membership, emailed and overnighted a letter to LRHC's counsel renewing and amending its February 18, 2026 RFI. *See* Exhibit L, February 24, 2026 Letter from UHWP's Counsel to LRHC's Counsel ("Ex. L").

52. Further, in this letter, and on behalf of UHWP, UHWP's counsel demanded that LRHC cease its winddown steps until it provided UHWP sufficient notice and an opportunity to bargain over the effects of LRHC's closure. *See* Ex. L.

53. On February 25, 2026, UHWP learned that LRHC did not pay its monthly contribution to the SEIU Healthcare Pennsylvania Training & Education Fund, as required by Article 22.2 of the CBA, in October, November, and December of 2025, and January of 2026.

54. LRHC did not submit its monthly eligibility report, as required by Article 22.2 of the CBA, in December of 2025, and January of 2026.

55. On February 25, 2026, Kronley emailed Austin a letter renewing its demand to bargain with LRHC over its effects to cease operations, cease LRHC's current winddown steps, and comply with its outstanding RFI. *See* Exhibit M, February 25, 2026 Letter from Kronley to Austin ("Ex. M").

56. On February 25, 2026, UHWP filed an unfair labor practice a charge against LRHC with the National Labor Relations Board alleging that LRHC engaged in an unfair labor practice by failing to provide proper notice, and bargain, and comply with its RFI. *See* Exhibit N, Unfair Labor Practice Charge ("Ex. N").

57. On February 27, 2026, pursuant to its CBA with LRHC, UHWP served a grievance on behalf of the entire bargaining unit upon LRHC with the following statement:

> The Employer violated, including but not limited to, Art. 25.3 when it failed to engage in a good faith effort to work with the union before unilaterally transferring bargaining unit work; failed to uphold its commitments to the shared guiding principles including, but not limited to the commitment to consumer choice and consumer directed and controlled support in violation of the preamble and guiding principles; and failed to provide the union with required 30 day notice and the opportunity to bargain over the decision and effects in violation of the MOU between the parties.

Exhibit O, UHWP February 27, 2026 Grievance ("Ex. O"); Exhibit P, "Read: Union Grievance and Request for Information" Email ("Ex. P").

58. UHWP's grievance is subject to binding arbitration under Article 10 of the CBA.

59. The grievance was served with a new RFI requesting the records relating to the missing contributions to the Fund. *See* Exhibit Q, February 27, 2026 Request for Information ("Ex. Q").

60. LRHC has refused to expedite this grievance as requested by the UHWP. Without expedition the grievance process can take greater than 28 days before it can be resolved in arbitration. LRHC has also failed to provide the information necessary for the UHWP to fully represent its members with respect to that grievance.

61. On March 3, 2026, UHWP served a second grievance on behalf of the entire bargaining unit upon LRHC with the following statement:

> The Employer violated, including but not limited to, Art. 22.2 when it failed to make monthly contributions to the SEIU Healthcare Pennsylvania Training & Education Fund for October, November, and December 2025, and January 2026; and when it failed to submit to the Fund monthly eligible reports in a spreadsheet for November and December 2025, and January 2026.

Exhibit R, UHWP March 3, 2026 Grievance ("Ex. R").

62. UHWP's grievance is subject to binding arbitration under Article 10 of the CBA.

63. LRHC has refused to expedite this grievance to binding arbitration as requested by the UHWP. If not expedited, it will take greater than 28 days for the grievance to be resolved in arbitration.

64. If the LRHC is permitted to proceed with actions in winding down its operations in violation of its obligations under the NLRA, the CBA and MOU, and requirements as an MA Provider, the UHWP and the bargaining unit of Attendants will suffer irreparable harm.

65. The UHWP will lose the negotiated right to bargain with LRHC prior to implementation of its plans to transfer Consumers and therefore the Attendants to other agencies in order for the UHWP to maintain the standards of the Attendants.

66. Among other things, without bargaining between the UHWP and the LRHC, bargaining unit employees of the UHWP may (1) lose accrued paid time off; (2) have paycheck errors that are not resolved; and (3) lose retention and referral bonuses.

67. Upon information and belief, some of the bargaining unit employees of UHWP will lose health care coverage.

68. If LRHC closes and terminates its participation in the CHC-MCO network of providers, it will no longer receive funding for its services and therefore will be unable to pay its required contributions to the Fund or monies owed to Attendants.

69. Most importantly, bargaining unit employees of UHWP will lose the benefits of their CBA and MOU and of union representation with respect to the obligations of LRHC to engage in good faith bargaining over the closure of the home care agency.

70. In absence of the requested injunction, if an arbitrator ultimately sustains the position of UHWP in the arbitration proceedings, the arbitrator will be unable to restore the *status quo ante* because, by the time any award will issue, UHWP and the bargaining unit already will have been stripped of the rights, benefits, and protections afforded them under the relevant CBA and MOU. As a result, the arbitrator will have no authority to order any new agency that hired an Attendant to become a party to, or to comply with the terms of, the relevant CBA.

## COUNT I
### Injunctive Relief Pursuant to
### Section 301(a) of the LMRA, 29 U.S.C. § 185(a)

71. All previous paragraphs are incorporated as though fully set forth herein.

72. Pursuant to Article 10 of the CBA, UHWP and LRHC have agreed to submit disputes arising under the CBA to binding arbitration.

73. The instant dispute, regarding LRHC's violations of the CBA and the MOU, is a dispute arising under the CBA, and, therefore, subject to binding arbitration.

74. The injunction sought is necessary to preserve the *status quo*.

75. UHWP, and the employees it represents, will be irreparably harmed, as described above, if an injunction does not issue.

76. If an injunction does not issue, the grievance and arbitration process within the CBA and the relief sought through unfair labor practice charge will be frustrated because an arbitrator's award will not be able to restore the *status quo*. Therefore, absent an injunction pending

the outcome of the grievance/arbitration process, any relief obtained through that process will be inadequate.

77. UHWP has no adequate remedy at law.

78. UHWP has a high likelihood of success on the merits of this action.

79. The harm to UHWP, and the employees it represents, if the court fails to grant injunctive relief is greater than the harm that will be sustained by the LRHC if the Court grants injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks this Honorable Court to:

a. Enter judgment for Plaintiff UHWP and against Defendant LRHC;

b. Issue an order enjoining Defendant LRHC from continuing its current winddown steps until an Arbitrator hears and issues a decision regarding its violation of the CBA and the MOU;

c. Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

**WILLIG, WILLIAMS & DAVIDSON**

/s/ *John R. Bielski*
John R. Bielski (Pa. No. 86790)
Ryan Allen Hancock (Pa. No. 92590)
Ty Parks (Pa. No. 335941)
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3600
jbielski@wwdlaw.com
rhancock@wwdlaw.com
tparks@wwdlaw.com

*Counsel for Plaintiff United Homecare Workers of Pennsylvania*